UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES E. ANDERSEN, on behalf of self and all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>WALMART STORES, INC. and DELL INC.,<br><br>Defendants.<br>_____ | ) <br>)<br>) **AFFIDAVIT RESPONSE 12B6**<br>) **MOTION OF WALMART**<br>)<br>)<br>)<br>) Civil Case No.: 16-cv-6488<br>)<br>)<br>) 28 U.S.C. §§ 1447 (c)<br>)<br>) Complaint Filed: May 16, 2016<br>) |

I Charles E. Andersen, does hereby depose and state as follow:

### "Andersen Does Not Allege Injury as a Result of the Alleged Deceptive or False Acts"
### (THIS QUESTION IS ANSWERED IN THE NEGATIVE)

Defendant place primary reliance on <u>Small v. Lorillard Tobacco Co.,</u> 94 N.Y.2d 43 (1999). This case deals with a claim under GBL 350 that false advertisements from cigarette manufacturers deceived plaintiff's about the addictive properties of cigarettes induced the plaintiff's to purchase cigarettes and continue smoking cigarettes.

The court in *Small* held among other things that the dangerous and addictive qualities of cigarette smoking are widely known, that the lynch pin of the defendants actions was proof of addiction, individual issues predominate over class issues in light of the extent and nature of possible addiction by class members.

In the matter at hand, surely, defendants counsel can do better that to cite the *Small* case. In rejecting plaintiffs' flawed "deception as injury" theory, the Appellate Division correctly pinpointed that addiction is inescapably the cornerstone of plaintiffs' legal claims. **Because plaintiffs abandoned the addiction component of the legal theory** of their cases, they therefore fail to demonstrate that they were "actually harmed"

or suffered pecuniary injury by reason of any alleged deception within the meaning of the statute. They cannot have it both ways. Without **addiction as part of the injury claim**, there is no connection between the misrepresentation and any harm from, or failure of, the product according to the court.

The plaintiff in this case is not alleging that he has a compulsive psychological or chemical addiction to purchasing $500 computers and defendants has made no showing whatsoever that the battery life claims of Dell are so widely known as false or mere puffery such as to be generally disregarded by consumers. The ruling in the <u>Small</u> case is largely irrelevant to the case at hand. For what it's worth the <u>Small</u> cases states that if Plaintiff had alleged that he paid a higher price for the cigarettes but for the advertisement that fact in and of itself would state a claim for damages.

The plaintiff has stated a claim for damages. Plaintiff has stated that he purchased the computer in reliance on the defendants claim that the product had 7.58 hours of battery life and that he was relying on this representation in that as an attorney, he needed a computer that could function all day in a courtroom, where plugs are often unavailable, Plaintiff has stated that the this matter has resulted in having to cut short his work resulting in loss of billable hours and inconvenience. Plaintiff has also state that he paid a higher or premium price for the product as a result of the misrepresentation:

```
"19. The false technical claims often results in
consumers paying a higher price for the Dell product.
20. The said conduct misled and deceived innumerable
consumers into purchasing and paying more for Dell
computers through Walmart stores when their products
in fact have less useable battery life than other
similarly priced models from other manufacturers."
```

In <u>Weisblum v. Prophase Labs</u>, Inc. 88 F. Supp 283 (2015) the court held that a plaintiff states a claim for damages under NY GBL 349 and 350 where plaintiff paid a premium for the product as a result of the misrepresentation. The measure of the damages according to the court is the difference in the price of the product as would be if it met

advertising claims, and the price of the product as actually sold. See also Ackerman v. Coca-Cola Co., 2010 U.S. Dist. Lexis 73156 (E.D.N.Y. July 21, 2010).

In Koenig v. Boulder Brands, Inc., 2014 995 F. Supp.2d 273 the court holds that a consumer states a claim for damages where he alleges that they would not have purchased, or paid a premium price for a product because of defendants deceptive acts and or practices.

In Ebin v. Kangadis Food Inc., 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. 2013) the defendant moved to dismiss a claim because the complaint failed to adequately allege actual injury arguing that deception alone is insufficient to establish injury and citing the Small case. Ebin purchased from Kangadis a product that was advertised to be 100% olive oil but was in fact something less. In Ebin the court holds that the plaintiff is not suing over deception alone, but rather that the plaintiff has separately plead deception and injury. "The deception is the false and misleading label and the injury is the purchase price. Indeed the very case that **Kangadis** cites (*Small*) recognizes that this is a permissible way to plead a New York General business law claim *Small, 94 N.Y.2d at 56 n.5 (proof that a material deceptive act or practice caused actual, although not necessarily pecuniary harm) is required to impose compensatory damages*".

**"Andersen Fails to Allege That the Products Plaque was False, Deceptive of Likely to Mislead a Reasonable Consumer"**
**(THIS QUESTION IS ANSWERED IN THE NEGATIVE)**

Defendant seeks to support it's position with Fink v. Time Warner, 837 F . Supp 279  However this case is inapplicable to the matter at hand. Plaintiff's claims in Fink were based on mere "puffery". The court found that advertising claims that the Road Runner internet service is "blazing fast", an "always-on connection" and "the fastest and easiest way to get online" where not actionable deceptions as no reasonable consumer would takes these claims at face value.

The rationale of the court makes sense, and it is for that very reason that bankruptcy lawyers cannot be sued for using advertisements like "Wipe Out Debt", "Sleep Like a Baby" and "Become Debt Free Today". It is obvious from the nature of

these claims, that they are just puffery and no reasonable consumer would take these type of claims as anything other than a means to get a potential client to an attorneys office for a free consultation and potentially get retained.

In the <u>Fink</u> case the plaintiff's also alleged that Time Warners statements that the Road Runner Service was "up to 3 times the speed of most DSL Packages and up to 100x faster than dial up" where false and deceptive because while using application such as Skype and BitTorrent the service was often as low as 30kbs.

The court although troubled by dismissing this allegation, found that the Plaintiff failed to state a case because they only alleged that the service failed to come up to advertised rates on a limited subset of application and not that the overall advertised internet speed was false.

The matter of <u>Walter v. Hughes Communications., Inc.,</u> 682 F. Supp 1031 (2010) is more applicable to the case at hand. This case also dealt with a false advertising claim based on internet speeds that where significantly slower than advertised.

In <u>Walter</u> the defendants advertised internet speeds up to 1.5MBS for residential plans and up to 2.0MBS for business plans. Defendants advertising also included a variety of disclaimers and qualifying statements, The plaintiffs claimed that "in reality HughesNet customers consistently receive slow and spotty service that falls woefully short of the fanciful claims set forth in Hughes' website and that Hughes' service during peak times generally performs at speeds lower even that what HughesNet states are 'typical' speeds and that slow speeds extend into non-peak low volume periods and that Hughes' advertising statements were mean to and did induce the Class to enter into agreements for HughsNet satelite internet service...".

The court in <u>Walters</u> held: "Plaintiff's allegations are sufficient to call into question Hughes' representation as to the speed of its services even when considered in light of its representations regarding typical speeds. Hughes' representations disclose hard, measurable quantities that cannot be characterized as mere "puffery". Plaintiffs claim that they were often unable to reach even "typical speeds" and that the off-peak speeds ended up being as slow as the advertised 'typical speeds'. A reasonable jury could find that representations about its internet services are deceptive even in light of Hughes'

disclosures that it could not guarantee and particular or average speed.

Andersen v. Dell is similar to Hughes in that Dell used hard cold data in it's advertisements that are materially false. It doesn't really matter whether Dell could produce some controlled artificial condition in which "the computer" might conceivable remain powered on for 7.58 hours on battery. Used in the way that a consumer would use a mobile computer, "the computer" has only 3.0 hours of battery life. Thus representations that the computer has up to 7.58 hours of battery life would be taken by the average consumer, that used lightly, the computer would remain powered on for 7.58 hours, or close to it. When used lightly "the computer" will only remain powered on for 3.0 hours.

Further as noted in the 12b(6) response to Dell, if the court feels plaintiff cannot prove damages, the court has no jurisdiction under the diversity statue since the amount in controversy has not been met. The courts obligation at that point is to remand the case to state court for a state court judge to decide whether the plaintiff can prove damages. Please see plaintiff's motion to remand (*Exhibit A*).

### "Andersen Fails to Sufficiently Allege that Walmart Took any Independent Misleading or Deceptive Acts" (ANSWERED IN THE NEGATIVE)

Defendant appears to misquote Sutman v. Chem.Bank, 95 N.Y.2d 24 (2000). *Sutman* stands for the proposition that ***reliance and intent to defraud not an element's of a section 349/ 350 claim***: "Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim"..."Plaintiff however must show that the defendant's material deceptive act caused the injury".

To the fact that Plaintiff must show that it is the defendants material deceptive act that caused the injury, defendant made and displayed the sign and sold the product out of it's store based on the false representation.

Plaintiff asserting a claim under New York's consumer protection laws need not demonstrate that defendant acted intentionally of with scienter Leider v. Ralfe, 387 F. Supp 2d. 383 (2005).

If in fact Plaintiff has any obligation to prove knowledge of the falsity on the part of Walmart he has alleged that in his pleading

```
17. Walmart sells and markets the Dell computer with
the inaccurate and misleading specifications to
layperson consumers and continues to do so after
having acquired information and belief as to the
falsity of Dells technical specification claims.
```

<u>Avola v. Lousiana-Pacific Corp</u>., 991 F. Supp2d 381 (E.D.N.Y. 2014) appears to be completely inapplicable to this case and deals with the affirmation of a jury verdict in a personal injury matter.

### *"Defendant Joins with the Co-Defendant in the Motion to Compel Arbitration"*
### **(THIS MOTION SHOULD BE DENIED OR SET FOR A JURY TRIAL ON WHETHER THERE WAS A LEGALLY BINDING AGREEMENT TO ARBITRATE)**

This motion is contractually based. In support the defendants point to some fine print on a box, which is not visible to the consumer until after the product is bought and paid for. Similarly the defendants point to the initial start up screen when the computer is first started after it has already been bought and paid for.

a) Customers purchasing a Dell computer are not handed "the box" until after the product has been paid for.

b) Defendant Dell does not require its distributor and retailer, Walmart Stores to go through any provisions of a Dell sales contract prior to or during the purchase of the product.

c) Any contracts arise at the point of sale, not after the product has already been purchased. A contract is based upon express terms agreed to by the parties at or before the time of the purchase, <u>United States ex rel. O'Donnell v. Countrywide Home Loans, Inc</u>, 822 F.3d 650. In <u>Andersen v. Dell</u> no agreement to arbitrate was read signed or negotiated prior to the point of sale, thus there is no provision in "the contract" for arbitration and Dell cannot add one post sale, through the start up screens. There is no contractual

provision to arbitrate that can be brought under the FAA.

  c) It is well established that misrepresentation in the inducement of a contract makes the contract void at the outset. <u>People v. Dell, Inc.,</u> 21 Misc. 3d 1110(A)(N.Y. Sup. Ct. 2008). (***Exhibit B***) Any case brought pursuant to GBL 349 false advertising voids at the outset any contract entered into as a result of the false advertisement. The theory of common law contract and the statutory remedy of 349 for false advertising regarding purchased products are mutually inconsistent.

  d) This action is not brought pursuant to contract, but rather under the consumer protection statue for fraudulent and unfair business practices. General Business Law 349 makes actions for false advertising a **<u>statutory tort</u>** against the consumer with provisions for treble damages, attorney's fee's and punitive damages.

  e) Contracts that create obligations inconsistent with the law are void at the outset. <u>Weil v. Neary</u>, 278 U.S. 160, 173-74, 73 L.Ed. 243, 49 S. Ct. 144 (1929). Defendant Dell Inc, would have the court believe that they can create a valid contract based on "the computers" start up screen, and that they can enforce that contract when the purchaser later finds out that his purchase was a statutory tort based on false representations as to the products specifications in violation of New York GBL 349 & 350.

  In <u>Bromberg v. Moul</u>, 275 F.2d 574 (2d Cir. N.Y. 1960) the court ruled on a similar issue. In <u>Bromberg</u> the plaintiff obtained summary judgment on a contract for the purchase of certain tools. The court upheld the defendants position that the contract was illegal and unenforceable since it violated a regulation of the office of price stabilization.

  The New York Supreme Court in <u>In re Gale</u>, 176 Misc 277; 27 N.Y.S.2d 18 held that a claim to enforce an illegal usurious transaction was not a legitimate subject of arbitration, and an award based thereon was void and not to be enforced by the courts.

  New York General Business Law section **399-c** prohibits the use of mandatory arbitration clauses in contracts for the sale or purchase of consumer goods. As "the computer" is a consumer good, and the purported arbitration agreement is "Mandatory" it is void at the outset as a contract in violation of the law and public policy.

  Federal Statue 38.33 [2][a] states that a Jury Trial is available in Proceeding to Compel Arbitration. The question is whether the parties have a valid or an invalid

agreement to arbitrate. The seventh Amendment confers the right to a jury trial and where there is an issue as to it's waiver, a jury trial must be held on the validity or the waiver.

Dell's attempt to create a mandatory arbitration agreement based on the box and the start up screen are an illegal attempt to evade the plain meaning of NY GBL 399-c and unenforceable as a valid contract on its face. In a very analogous case the Western District of New York court held that a contract in a rental car agreement that purported to waive or limit liabilities for injuries resulting from the use of the car pursuant to such agreement was void and un-enforceable as contrary to public policy as they undermined the legislative rationale underlying V&T 388. <u>Murdza v. Zimmerman</u>, 98 CV-0040E(F) 2000 U.S. Dist, Lexis 18768; <u>Prince v. Gurtiz</u> 45 N.Y.S. 2d 901(1978);

The Federal Arbitration Act makes "'arbitration agreements as enforceable as other contracts, but not more so.'" <u>McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.</u>, 858 F.2d 825, 831 (2d Cir. 1988) (citing <u>Prima Paint Corp. v. Flood & Coughlin Mfg. Co.</u>, 388 U.S. 395, 404 n.12, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967)). HN1Go to the description of this Headnote.In deciding a motion to compel arbitration under the Act, a court must answer two questions: First, did the parties enter into an agreement to arbitrate? Second, and only if the answer to the first question is yes, does the dispute before the court fall within the scope of that agreement? See <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 24-34, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991); <u>Spear, Leeds & Kellogg v. Central Life Ins. Co.,</u> 85 F.3d 21, 25 (2d Cir. 1996).

<u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.,</u> 388 U.S. 395 (U.S. 1967)" Let us look briefly at the language of the Arbitration Act itself as Congress passed it. Section 2, the key provision of the Act, provides that "[a] written provision in . . . a contract . . . involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis added.) Section 3 provides that "if any suit . . . be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement, shall . . . stay the trial of the action until such arbitration has been had . . . ." 5 (Emphasis added.)

The language of these sections could not, I think, raise doubts about their meaning except to someone anxious to find doubts. They simply mean this: an arbitration agreement is to be enforced by a federal court unless the court, not the arbitrator, finds grounds "at law or in equity for the revocation of any contract." Fraud, of course, is one of the most common grounds for revoking a contract. *If the contract was procured by fraud, then, unless the defrauded party elects to affirm it, there is absolutely no contract, nothing to be arbitrated*."

### *This matter was instituted with probably cause to believe that the Defendants have violated GBL 349 and 350*

14. The plaintiff has good and just reason for bringing this action pursuant to the New York General Business Obligation Laws 349 ( Unfair and Deceptive Practices) and 350 (False Advertising) in that:

    a) The defendants marketed "The computer" as having 7.58 hours of battery life. See exhibit C-1.

    b) The price of "the computer" is $499.00 (see exhibit C-2)

    c) This give "the computer" an unfair and untrue appearance of having an advantage over other products on the same display which all advertised 4-5 hours of battery life.

    d) The defendants have marketed the computer with hard cold technical specifications that are untrue.

15. The Plaintiff sought to ascertain why his purchase wasn't living up to the advertised specifications by contacting Dell Technical Support who:

    a) Ran technical tests on "the computer" based on the computers unique product ID to determine whether it was functioning properly and  determined that it was.

    b) In a phone conversation with a Dell technical support representative Plaintiff was advised that his computer was only designed to have 2-3 hours of battery life. When the representative was questioned about the claim that "the computer" has up to 7.58 hours of battery life, the representative asked "Who's saying that?". When advised that that was what was on the Walmart counter display, plaintiff was told that "We don't have

anything to do with that", and that plaintiff "should talk to Walmart about their counter display".

      c) The technical support representatives statements in 15(b) are exactly consistent with plaintiff's first had experience in using and evaluating "the computer".

16. Plaintiff subsequently engaged another Dell technical support representative in an online chat session in which similar admissions were made. See the transcript of the chat session attached as Exhibit D.

17. Subsequently to the filing of the complaint and in considering defendant's 12(b)(6) motions plaintiff ran a scientific test on "the computer" to determine whether there was any possibility that "the computer could achieve 7.58 hours of battery life.

      1. The test was based on a simple windows console application using coding directly from Microsoft.

      2. The program performs only one simple function which is to read from "the computers" own output regarding it's system functions and write the output to a text file once per minute.

      3. With the program running Windows task manager verified that the program itself utilized 0 percent of "the computers" available CPU while running.

      4. Plaintiff tested "the computer" with the program under the following conditions:

        a) The computer was disconnected from the Internet.

        b) The computer was running no programs other than the test program itself.

        c) The computer screen was set to 80% brightness level.

        d) The computer was set to not allow the computer to sleep or hibernated during the running of the test.

        e) The Plaintiff started the program and then disconnected the AC power chord and left the room.

        f) Plaintiff came back five hours later to see how "the computer was doing"

        g) As expected the computer had shut down.

        h) Plaintiff plugged the computer back in and restarted it and then examined the output from the program.

i) The computer shut down due to lack of power at 3 hours and 32 minutes after the test began. (See the data file attached as exhibit E).

### Leave to Amend the Complaint

18. Should the court determine for some reason that the complaint has technical pleading deficiencies, plaintiff request leave to amend the complaint to cure any technical errors.

**WHEREFORE**, plaintiff demands the following relief:

That the defendants 12(b)(6) motion be denied and dismissed, or in the alternative for leave to amend his complaint

That the defendants motion to compel arbitration be denied and dismissed or in the alternative that the court set the matter of the arbitration agreement for a jury trial.

sworn to this 16th day of August, Auburn NY.                    /s/Charles E. Andersen

Charles Andersen
Attorney at Law
100 N. Main Street
Suite 310B
Elmira, NY 14901
607-339-8669  charanders4@aol.com