UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHARLES ANDERSEN,

                            Plaintiff,                  DECISION AND ORDER

-vs-

                                       16-CV-6488 CJS

WALMART STORES, INC. and DELL, INC.,

                            Defendants.

_____

APPEARANCES

For Plaintiff:                    Charles Andersen, *pro se*
                                  100 Main Street, Suite 310B
                                  Elmira, New York 14901

For Defendant
Walmart Stores, Inc.:          Nathaniel Ari Weisbrot
                                  Fox Rothschild LLP
                                  75 Eisenhower Parkway
                                  Roseland, New Jersey 07068

For Defendant
Dell, Inc.:                        Kimball R. Anderson
                                  Kathleen W. Moss
                                  Winston & Strawn LLP
                                  35 West Wacker Drive
                                  Chicago, Illinois 60601

                                  Timothy J. Graber
                                  Brian P. Crosby
                                  Gibson, McAskill & Crosby
                                  69 Delaware Avenue, Suite 900
                                  Buffalo, New York 14202

INTRODUCTION

This is a proposed class action asserting claims for "unfair and deceptive

business practices and false advertising" in violation of New York General Business

1

Law ("GBL") § § 349[1],350[2] and 350-a.[3]   Now before the Court are the following applications: 1) Dell's motion [#9] to compel arbitration or alternatively to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6); 2) Walmart's motion [#11] to dismiss the Complaint under FRCP 12(b)(6) or alternatively to compel arbitration; and 3) Andersen's cross-motion [#14] to remand the action to state court pursuant to 28 U.S.C. § 1447(c).   Plaintiff's motion to remand is denied, and Defendants' motions to stay this action and compel arbitration are granted.

BACKGROUND

On May 16, 2016, Charles Andersen ("Plaintiff") commenced this action in New York State Supreme Court, Chemung County.   The proposed class-action Complaint alleges, in pertinent part, that defendants violated GBL § § 349, 350 and 350-a, by selling Dell 15-5000 laptop computers that were falsely represented to have "up to 7.58 hours of useable battery life," when they actually had "no more than three hours of useable battery life."   In this regard, the Complaint alleges that the subject laptops were not defective *per se*, but were "functioning properly," as "designed[,] to have only 2 to 3

---

[1]GBL § 349(h) states: "[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his *actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.* The court may award reasonable attorney's fees to a prevailing plaintiff." (emphasis added).

[2]GBL § 350 states: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

[3]GBL § 350-a(1) states in pertinent part: "The term "false advertising" means advertising, including labeling, of a commodity. . . if such advertising is misleading in a material respect."  GBL § 350-e(3) states: "Any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her *actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated this section.* The court may award reasonable attorney's fees to a prevailing plaintiff."

2

hours of useable battery life."  According to the Complaint, the problem was not with the product, but with the misrepresentations made about the product.  More specifically, the Complaint contends that Dell provided Walmart with "scan codes and other information" with "grossly exaggerated figures" as to battery life, in order to gain a "marketplace advantage," and that Walmart continued to use such information in its stores "after having acquired information and belief as to the falsity of Dell's" claims as to battery life.

Plaintiff is a citizen of New York State, while Defendants Walmart Stores, Inc. and Dell Inc. are Delaware Corporations with their principal places of business in Arkansas and Texas, respectively.  The Complaint is purportedly brought on behalf of Plaintiff and all other persons who bought such Dell laptops in New York State, whom, Plaintiff estimates, comprise a proposed class "in excess of 10,000 members."  The Complaint indicates that the subject laptop computers retailed for approximately $499, that each person who bought one "got something less tha[n] what [was] bargained for," and that "the damage to each member of the [proposed] class is relatively small."  The Complaint demands "[m]oney damages in excess of $1,000,000," as well as costs and attorney's fees.

On July 14, 2016, Defendants removed the action to this Court, contending that this Court has original diversity jurisdiction "pursuant to 28 U.S.C. § 1332(d) (as amended by the Class Action Fairness Act ('CAFA')."  More specifically, Defendants stated:

> Under § 1332(d), federal courts have original diversity jurisdiction over a class action whenever "any member of a [putative] class of plaintiffs is a citizen of a state different from any defendant," 28 U.S.C. § 1332(d)(2)(A), and "the matter in controversy exceeds the sum or value of $5,000,000,

exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). Both
requirements are satisfied here because the matter in controversy in the
aggregate exceeds the sum of $5,000,000, exclusive of interest and
costs, and there is a diversity of citizenship between Plaintiff and Dell and
Plaintiff and Walmart.

Notice of Removal [#1] at pp. 2-3.

In estimating the jurisdictional amount in controversy, Defendants took the

Complaint's allegation that there are "in excess of 10,000 members" of the proposed

class, and multiplied that figure by the maximum damages-per-violation allowed under

GBL § § 349 and 350-e, which is one thousand dollars and ten thousand dollars,

respectively, for willful or knowing violations.[4]

On July 20, 2016, Dell filed the subject motion [#9] to compel arbitration or, in the

alternative, to dismiss the Complaint pursuant to FRCP 12(b)(6).  The motion to compel

arbitration alleges that the packaging of the subject laptop computers included a

conspicuous label, advising buyers that the purchase and use of each computer was

subject to Dell's terms of sale, which include "the use of arbitration to resolve disputes

on an individual basis," "instead of jury trials or class actions." The notice on the box

further directed purchasers to the web address for Dell's complete statement of terms

of sale.

Dell's motion to compel further indicates that the subject computers had pre-

loaded start-up screens, setting forth "Dell's full Terms and Conditions," including an

arbitration clause and class-action waiver.[5]  According to Dell, purchasers had to

---

[4]Notice of Removal [#1] at ¶ ¶ 19-21.

[5]Pape Aff. [#9-1] at ¶ 8.

indicate their agreement with those terms, by clicking on a box labeled "Accept," before using the laptop.  The start-up screen further contained a notice advising purchasers to return the product if they did not agree with Dell's terms.[6]  Dell's Terms and Conditions further indicated that Dell would pay for the purchaser's arbitration fees, and that any disputes would be governed by the laws of the State of Texas. *Id*. at ¶ ¶ 9-10.  Based upon these facts, Dell contends that Plaintiff, and any potential class members, agreed to arbitrate any claims, both by keeping and using the laptops and by clicking the on-screen box to indicate their acceptance of Dell's terms.  Dell therefore maintains that this Court should stay this action and compel arbitration.

Alternatively, Dell contends that the Complaint fails to state actionable claims, and should be dismissed.  Dell contends, for example, that the Complaint does not adequately describe the model of  computer that Plaintiff purchased.  The main thrust of Dell's 12(b)(6) argument, however, is that the Complaint does not allege that Dell's description of the potential battery life of the computer -- that it had "up to 7.58 hours" of battery life --  was false, or that it would have misled a reasonable consumer.  As to these points, Dell argues that the Complaint fails to explain specifically how Plaintiff uses his laptop, or to allege that it is impossible for the laptop to achieve 7.58 hours of battery life.  Dell further maintains that the Complaint fails to properly plead injury or damages.

On July 21, 2016, defendant Walmart Stores, Inc. moved to dismiss the Complaint, pursuant to FRCP 12(b)(6), or, in the alternative, to join in Dell's motion to

---

[6]Pape Aff. [#9-1] at ¶ 7.

compel arbitration.  Specifically, Walmart contends that the Complaint fails to allege injury, which, Walmart maintains, must be something more than having purchased a product based on an alleged misleading statement about the product.  Walmart further states that the Complaint fails to plead that the statement complained of (battery life "up to 7.58 hours") was false, deceptive or misleading to a reasonable consumer, since a battery life of two-to-three hours falls within the range of "up to 7.58 hours," and a reasonable consumer would not expect "up to 7.58 hours" to mean that the computer's battery actually lasted that long under ordinary use.  Walmart also indicates that the Complaint fails to allege that Walmart did anything apart from passively displaying "the promises that were made by Dell on the Dell laptop's advertising label."

Alternatively, Walmart agrees with Dell that Plaintiff is bound by the arbitration agreement to arbitrate his claims against both Dell and Walmart.  On this point, Walmart indicates that the arbitration agreement covers disputes with Dell as well as disputes with "any third party providing products or services" in connection with the purchase of the Dell laptop,  which includes Walmart.

On July 26, 2016, Plaintiff filed a cross-motion to remand this action to state court.  Plaintiff contends both that the amount in controversy is not sufficient to support federal diversity jurisdiction for a class action under 28 U.S.C. § 1332(d), and that the Court must decline jurisdiction under 28 U.S.C. § 1332(d)(4)(A)(i)(I), because "greater than two-thirds of the members of [the proposed class] are citizens" of New York.  Plaintiff also opposes Defendants' motions to compel arbitration and to dismiss for failure to state a claim.  With regard to the motion to compel arbitration, Plaintiff essentially asserts four arguments: 1) the arbitration agreement is unenforceable

6

because it was not presented to him until after he purchased the computer; 2) the

arbitration agreement is void because he was fraudulently induced to buy the computer;

3) the arbitration agreement is unenforceable because it is contrary to the consumer-

protection purposes of  GBL § § 349 & 350; and 4) the arbitration agreement is

unenforceable because it is contrary to GBL § 399-c, which prohibits arbitration clauses

involving the sale of consumer goods.  With regard to Defendants' 12(b)(6) motions,

Plaintiff insists that he has adequately stated claims under GBL § § 349 and 350.

On  January 6, 2017, Plaintiff and counsel for the  Defendants appeared before

the undersigned for oral argument of the motions.

DISCUSSION

Before the Court are a motion to remand the action to state court, motions to

compel arbitration and motions to dismiss the Complaint for failure to state a claim.

The Court will address the motion to remand first, since it involves the Court's subject-

matter jurisdiction over this action.

Plaintiff's Motion to Remand

After Plaintiff commenced this action in state court as a proposed class action,

Defendants removed the action to this Court on the grounds of diversity jurisdiction,

pursuant to 28 U.S.C. § 1332(d)(2)(A), which states in pertinent part:

> The district courts shall have original jurisdiction of any civil action in
> which the matter in controversy exceeds the sum or value of $5,000,000,
> exclusive of interest and costs, and is a class action in which . . .  any
> member of a class of plaintiffs is a citizen of a State different from any
> defendant[.]

28 U.S.C.A. § 1332 (West 2017).  Plaintiff timely filed the subject motion to remand,

7

alleging that the amount in controversy, consisting of the aggregated claims of the class members, does not exceed $5 million, as required by the statute.  Plaintiff further contends that even if the amount in controversy was met, that remand would still be required pursuant to 28 U.S.C. § 1332(d)(4)(A)(I), which states:

> A district court shall decline to exercise jurisdiction under paragraph (2)--(A)(i) over a class action in which--(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; (II) at least 1 defendant is a defendant--(aa) from whom significant relief is sought by members of the plaintiff class;(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed; and (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C.A. § 1332(d)(4) (West 2017).  On this point, Plaintiff maintains that this Court must decline jurisdiction because greater than two-thirds of the members of the proposed class are citizens of the State of New York.[7]

At the outset, Defendants maintain, and the Court agrees, that little discussion is required to deny Plaintiff's application to remand insofar as it is based upon § 1332(d)(4).  As Defendants correctly point out, Plaintiff has focused on § 1332(d)(4)(A)(i)(I), while ignoring the rest of § 1332(d)(4)(A)(i) & (ii), which also must be satisfied before a court is required to decline jurisdiction. *See, e.g., Wurtz v. Rawlings*

---

[7]Motion to Remand at p. 3 ("Local Controversy").

*Co., LLC*, 761 F.3d 232, 240 (2d Cir. 2014) (Observing that for § 1332(d)(4)(A) to apply, all of the subsections of that provision must be met).[8]  Subsection (d)(4)(A)(i)(II) cannot be satisfied here, since neither of the Defendants is a citizen of New York.  Accordingly, that aspect of Plaintiff's motion to remand is denied.

Alternatively, Plaintiff contends that the requisite $5 million amount-in-controversy is not satisfied here.  The applicable law on this point is well settled.  "The burden of proving jurisdiction is on the party asserting it," *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996), which in this case is the Defendants.  Such a showing of jurisdiction must be made by a preponderance of the evidence. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  With regard to the amount-in-controversy requirement found in 28 U.S.C. § 1332(d),

> a party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount. In order for a case to fall under the federal diversity statute, the plaintiff must prove diversity of the parties, and an amount in controversy that appears, to a "reasonable probability," to be in excess of the statutory jurisdictional amount of [$5,000,000, exclusive of interest and costs].

> This burden is hardly onerous, however, for we recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy. To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must

---

[8]*See also*, 14B Wright & A. Miller, Federal Practice and Procedure, § 3724  (4th ed.) ("In section 1332(d)(4)(A), the statute commands that district courts decline to exercise jurisdiction over class actions in which greater than two-thirds of the members of all proposed plaintiff classes—in the aggregate—are citizens of the state in which the action originally was filed; *at least one defendant from whom significant relief is sought, and whose alleged conduct forms a significant basis for the class claims, is a citizen of the State in which the action was commenced*; the principal alleged injuries were incurred in the State in which the action was filed; *and* during the three years prior to filing, no other class action asserting similar factual allegations was filed. This is commonly known as the "local controversy" exception.") (emphasis added).

show "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold.

*Fadia v. U-Haul, Inc.*, No. 09-CV-6364 CJS, 2010 WL 3211075, at *4–5 (W.D.N.Y. Aug. 11, 2010)  (*citing Fernicola v. Toyota Motor Corp.*, 313 Fed.Appx. 408, 408–409, 2009 WL 535974 at *1 (2d Cir. Mar.3, 2009) and *Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 397 (2d Cir.2003)).  "Where the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994).  "When assessing the jurisdictional amount, the Court considers the plaintiffs' allegations, not the likelihood of recovery. *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F. Supp. 3d 568, 579 (S.D.N.Y. 2016) (Koeltl, J.) (*citing Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir.1982); other citation omitted).

In this action, when Defendants removed the action, they made the following statements concerning the amount in controversy:

> [T]he Complaint is pleaded as a putative class action by which Plaintiff seeks to represent "all persons who purchased Dell Laptop Inspiron 15-5000 computers from Wal Mart [sic] Stores within the State of New York." (Compl. ¶ 7.)

> Plaintiff alleged that the class is "so numerous," stating "the size of the class is estimated to be in excess of 10,000 members." (Compl. ¶ 10.)

> Among the allegations made in the Complaint is that Plaintiff and members of the putative class are entitled to "money damages in excess of $1,000,000 on behalf of the class and himself;" "payment of plaintiff's

attorney's fees from the amount recovered for the common benefit of the class;" "costs of suit;" and "such other and further relief as the court deems just and proper." (Comp. Prayer for Relief ¶¶ 2–5.)

Plaintiff alleges that he paid $499.00 for the laptop at issue in this Action. (Compl. ¶ 14.)

Pursuant to N.Y. GEN. BUS. LAW § 349, a plaintiff may recover his actual damages or three times the actual damages up to one thousand dollars if the court finds the defendant willfully or knowingly violated § 349. While Dell denies violating § 349 in any way, let alone willfully or knowingly, given the size of the class, the claims asserted by Plaintiff could potentially add up to $10,000,000 or more.

Pursuant to N.Y. GEN. BUS. LAW § 350-[e], a civil plaintiff may recover no more than $5,000 per violation of N.Y. GEN. BUS. LAW § 350 or N.Y. GEN. BUS. LAW § 350-a. While Dell denies violating § 350 or § 350-a in any way, given the size of the class, the claims asserted by Plaintiff could potentially add up to $50,000,000 or more.

Thus, the amount placed in controversy by Plaintiff's Complaint clearly exceeds the $5,000,000 threshold set by CAFA.

Notice of Removal [#1] at ¶ ¶ 14-21.

 Plaintiff points out, however, that the demand in the Complaint is only for money damages "in excess of" one million dollars, along with attorneys fees and costs. Plaintiff argues that the amount in controversy should not be calculated based upon the purchase price of the computer, since the class action is not seeking to recover the full purchase price of the computer as damages, but rather, is seeking only an amount necessary to buy a longer-lasting battery or an external battery, though that explanation

Case 6:16-cv-06488-CJS   Document 22   Filed 02/17/17   Page 12 of 24

is not set forth in the Complaint.[9]  Plaintiff also contends that the amount in controversy

should not be estimated using the maximum allowable statutory damages, since,

although the Complaint alleges that Defendants acted willfully or knowingly, Defendants

have not demonstrated that class members in this action would actually be entitled to

such maximum amounts.

Defendants respond that "[t]he size of the purported class, the retail value of the

laptops at issue, and the availability of attorney's fees and punitive damages all lead to

a potential recovery that is likely to exceed [the] $5 million requirement."[10]  More

specifically, Defendants contend that based upon the allegations in the Complaint,

there is a "reasonable probability" that the amount in controversy is met.  Further,

Defendants contend that the Court should count punitive damages in the calculation,

since the Complaint alleges that the Defendants willfully and/or knowingly

misrepresented the computers' battery life.

In considering whether the requisite amount in controversy is met here, the Court

must consider the damages to which Plaintiff and the proposed class could recover

under New York State law, exclusive of interest and costs.  *See, Muchler v. Greenwald*,

624 F. App'x 794, 798 (3d Cir. 2015) ("To determine if a claim meets the jurisdictional

amount under § 1332, the court must examine what damages are recoverable under

state law.").

In that regard, at the outset, the Court finds that although Plaintiff has demanded

---

[9]Plaintiff also argues that even if the Court were to use the purchase price of the computer ($499) multiplied by 10,000 class members, it would still not reach the $5 million threshold.  However, Plaintiff ignores the fact that the Complaint alleges that the class size is "in excess of 10,000 members."

[10]Docket No. [#18] at pp. 1-2.

12

attorney's fees in the Complaint, such fees cannot be counted in figuring whether the amount is controversy is satisfied here.  "Attorneys' fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to statute or contract." *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 85–86 (2d Cir. 2012). Where a court has discretion whether to award attorney's fees under a statute, courts do not include attorney's fees in computing the amount in controversy. *See, e.g., Cohen v. KIND L.L.C.*, No. 15-MC-2645 (WHP), 2016 WL 4987165, at *3 (S.D.N.Y. Sept. 15, 2016) ("Courts in the Second Circuit hold that where a plaintiff brings claims under a state statute permitting courts to award attorneys' fees as "a matter of discretion, not a matter of right," then such fees "will not meet the jurisdictional amount requirement" set forth in 28 U.S.C. § 1332.") (collecting cases).

In the instant case, both GBL § § 349 & 350-e indicate that a court "*may* award reasonable attorney's fees to a prevailing plaintiff," indicating that such an award is discretionary.  Consequently, the Court will not consider attorney fees when evaluating whether the amount is controversy is met. *See, Jeffrey's Auto Body, Inc. v. Progressive Cas. Ins. Co.*, No. 5:12-CV-776 MAD/DEP, 2013 WL 592677, at *4 (N.D.N.Y. Feb. 14, 2013) ("Plaintiff seeks attorneys' fees pursuant to GBL § 349. Pursuant to that statute, "[t]he court may award reasonable attorney's fees to a prevailing party." N.Y. Gen. Bus. Law § 349(h) (emphasis added).  As the language of the statute makes clear, an award of attorneys' fees under the statute is discretionary, not mandatory.  As such, since attorneys' fees are not "recoverable as of right," but merely discretionary, the Court cannot count such an award toward the jurisdictional amount.").

Nevertheless, the Court finds that Defendants have shown to a reasonable degree of certainty, based upon the allegations in the Complaint, and without regard to attorney's fees, interest or costs, that the amount in controversy is at least $5 million. Defendants' argument on this point focuses on the fact that GBL § § 349 and 350-a allow a plaintiff to recover maximum statutory damages of  $1,000 and $10,000 respectively, for  willful or knowing violations, which, when multiplied by the 10,000-plus class members, easily satisfies the $5 million threshold.  Based upon the allegations in the complaint, there is a reasonable probability that Defendants could be facing such penalties.  However, even apart from such maximum penalties, GBL § 350-e(3) provides a minimum penalty of "actual damages or five hundred dollars, whichever is greater," which, when multiplied by the 10,000-plus class members, also exceeds the $5 million threshold.  Plaintiff, on the other hand, has not shown to a legal certainty that the amount recoverable does not meet the jurisdictional threshold.  Accordingly, Plaintiff's motion to remand is denied.

<u>Defendants' Motion to Compel Arbitration</u>

Defendants have moved to stay this action and compel arbitration, pursuant to the arbitration clause in Dell's Terms and Conditions which, they maintain, became a binding agreement when Plaintiff elected to retain and use the computer.  The general legal principles governing such an application are as follows:

> A party to a contract that requires arbitration may petition a district court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.' 9 U.S.C. § 4.  A court must compel arbitration if it determines that a contractually valid arbitration agreement exists under the relevant state law and that the parties' dispute falls within the scope of that agreement.  When assessing the validity of an

arbitration agreement, the general rule is that courts should apply ordinary state-law principles that govern the formation of contracts.

*Whitehaven S.F., LLC v. Spangler*, 633 F. App'x 544, 545–46 (2d Cir. Dec. 9, 2015) (citation and internal quotation marks omitted).

Defendants maintain, based upon the notice that appeared on the computer's packaging and the on-screen notice that appeared when Plaintiff first used the computer, each of which prominently referenced arbitration, that a binding arbitration agreement was formed both when Plaintiff retained the computer, rather than returning it, and when he clicked the "accept" icon on the computer screen. The Court agrees. In that regard, the computer's packaging box advised Plaintiff that his "PURCHASE AND . . . USE" of the computer was "SUBJECT TO DELL'S TERMS OF SALE," which Plaintiff could access at the web address provided. (emphasis in original). The notice on the box emphasized, though, that such Terms of Sale "REQUIRE[D] THE USE OF ARBITRATION TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS and where applicable specify arbitration INSTEAD OF JURY TRIALS OR CLASS ACTIONS." (emphasis in original). Consequently, even without having reviewed Dell's full Terms of Sale, Plaintiff was put on notice that such terms included an arbitration clause.

Additionally, when Plaintiff used the computer for the first time, he was confronted with a start-up screen that not only set forth Dell's Terms and Conditions in their entirety, but included an initial notice, in bold capital letters, that such Terms and Conditions included a "BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER IN SECTION 10," that "AFFECTS HOW DISPUTES ARE RESOLVED." Such initial on-screen notice also advised Plaintiff that "the act of clicking [the] 'I accept'" icon

15

would signify is agreement with Dell's Terms, and further stated: "IF YOU DO NOT

AGREE WITH THESE TERMS, DO NOT USE YOUR PRODUCT AND RETURN IT TO

DELL IN ACCORDANCE WITH DELL'S RETURN POLICY," to which a link was

provided.

     As for the full Terms that were set forth below the initial notice, they included yet

another initial statement drawing attention to the arbitration clause and class-action

waiver. Pape Aff. Ex. C ("THESE TERMS REQUIRE THE USE OF ARBITRATION ON

AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR

CLASS ACTIONS.  IF YOU DO NOT AGREE WITH THESE TERMS, DO NOT

ORDER/KEEP YOUR PRODUCT").

     Below that statement, Dell's statement of terms included a paragraph setting

forth the full terms of the arbitration clause, which, by its terms, applied to

> ANY CLAIM, DISPUTE OR CONTROVERSY (WHETHER IN
> CONTRACT, TORT OR OTHERWISE . . . INCLUDING STATUTORY,
> CONSUMER PROTECTION . . . CLAIMS . . .  BETWEEN CUSTOMER
> AND DELL, its agents, employees, successors, assigns and direct and
> indirect subsidiaries, and any third party providing any products or
> services to you in connection with your purchase (collectively "Dell")
> arising from or relating in any way to your purchase of this Product.

The terms further stated:

> You agree to an arbitration on an individual basis.  In any dispute,
> NEITHER CUSTOMER NOR DELL SHALL BE ENTITLED TO JOIN OR
> CONSOLIDATE CLAIM BY OR AGAINST OTHER CUSTOMERS, OR
> ARBITRATE OR OTHERWISE PARTICIPATE IN ANY CLAIM AS A
> CLASS REPRESENTATIVE [OR] CLASS MEMBER[.]"

Pape Aff., Ex. C (emphasis in original).  Defendants contend that Plaintiff agreed to

these terms, by keeping and using the computer, and by clicking on the "accept" icon

before using the computer.  On these facts, the Court finds that Defendants have

shown both that a contractually valid arbitration agreement exists,[11] and that Plaintiff's

claims falls within the scope of that agreement.

Plaintiff does not dispute that he kept the computer, rather than returning it, or

that he clicked on the "accept" icon contained in Dell's Terms and Conditions when he

began using the computer.  Nevertheless, Plaintiff contends that there is no enforceable

arbitration agreement, for four reasons: 1) the arbitration agreement is unenforceable

because it was not presented to him until after he purchased the computer; 2) the

arbitration agreement is void because he was fraudulently induced to buy the computer;

3) the arbitration agreement is unenforceable because it is contrary to the consumer-

protection purposes of  GBL § § 349 & 350; and 4) the arbitration agreement is

unenforceable because it is contrary to New York GBL § 399-c, which prohibits

arbitration clauses involving the sale of consumer goods.  None of these points, which

the Court will consider in reverse order, have merit.

Preliminarily, the Court finds that Plaintiff's argument concerning GBL § 399-c

lacks merit, because that provision of New York law is pre-empted by the Federal

Arbitration Act in cases, such as this one,[12] involving interstate commerce. *See, Marino*

*v. Salzman*, 51 Misc.3d 131(A), 2016 WL 1224301 (2d Dept. 2016) (GBL § 399-c

---

[11]Although the alleged arbitration clause contains a Texas choice-of-law provision, Defendants maintain, and Plaintiff has not disputed, that the law of the states of Texas and New York are indistinguishable on this point, and the parties have cited almost entirely New York and Second Circuit cases in connection with this issue.

[12]Plaintiff has not argued that there is an insufficient interstate nexus here, nor does the Court believe that he could successfully do so, given the locations of the parties and the nature of the transaction at issue. See, Pl. Memo of Law [#17] at un-numbered p. 7.

preempted by the Federal Arbitration Act in case involving interstate commerce); *see also, DeOliveira v. Custom Made*, 48 Misc. 3d 1204(A), 18 N.Y.S.3d 578 (N.Y. Civ. Ct. 2015) ("[T]he agreement, with its arbitration clause, clearly affects interstate commerce. Consequently, GBL § 399–c is preempted by the Federal Arbitration Act.").

Plaintiff next contends that the arbitration clause is invalid because his claims are brought pursuant to statute, not contract, and the arbitration clause is contrary to the consumer-protection purposes of GBL § § 349 & 350.[13]  To the extent that Plaintiff is arguing that arbitration clauses are inapplicable generally to claims brought pursuant to a statute, as opposed to a contract, he cites no authority, nor does the Court believe that such an argument has merit.  To the extent that Plaintiff contends that arbitration clauses are inapplicable to claims brought under consumer-protection statutes, or the GBL specifically, he has cited a few cases, none of which stand for that broad proposition; indeed, two of the cases do not pertain to arbitration at all.[14]  In any event, courts routinely enforce arbitration agreements in cases involving alleged violations of GBL § § 349 & 350 and other consumer protection statutes. *See, e.g., Zambrana v. Pressler and Pressler, LLP*, 16-CV-2907 (VEC), 2016 WL 7046820 (S.D.N.Y. Dec. 2, 2016) (granting motion to compel arbitration in action alleging violation of GBL 349 by

---

[13]*See*, Pl. Memo of Law [#16] at un-numbered p. 7 ("Contracts that create obigations inconsistent with the law are void at the outset.").

[14]Plaintiff essentially relies upon three cases: *Weil v. Neary*, 278 U.S. 160, 173-74, 49 S.Ct. 144 (1929) (not involving arbitration, but holding that contract for legal services that violated Bankruptcy Court rules was uneforceable as against "public policy and professional ethics"), *Bromberg v. Moul*, 275 F.2d 574 (2d Cir. 1960) (not involving arbitration, but vacating an award of summary judgment on a contract for the sale of tools, where the prices allegedly charged for the tools "violated a regulation of the Office of Price Stabilization": "Such a violation [would be]  a valid defense to the enforcement of the contract") and *In re Gale*, 176 Misc. 277 (Sup. Ct. NY County 1941) (denying arbitrator's award due to fact that underlying promissory notes were admittedly usurious, in violation of New York law, and therefore void), overruled by 262 A.D. 834 (1st Dept. 1941) (Observing that the arbitrator had correctly determined that the subject promissory notes were not usurious).

credit card company); *see also, Frankel v. Citicorp Ins. Servs., Inc.*, No. 11–CV–2293 (NGG)(RER), 2015 WL 6021534 (E.D.N.Y. Oct. 14, 2015) (Granting motion to compel arbitration where plaintiff alleged violations of GBL § § 349 & 350); *Cho v. JS Autoworld 1 Ltd.*, 97 F. Supp. 3d 351, 358 (E.D.N.Y. 2015) (Granting motion to compel arbitration in claim under GBL § § 349 & 350 alleging that car dealer had misrepresented price of vehicle, observing that "claims under Section 349 and 350 of the New York General Business Law may be resolved through arbitration.") (quoting *Kuehn v. Citibank, N.A.*, No. 12 CIV. 3287(DLC), 2012 WL 6057941, at *1 (S.D.N.Y. Dec. 6, 2012)). Accordingly, Plaintiff's argument on this point lacks merit.

Plaintiff next contends that there is no valid arbitration agreement, because he was fraudulently induced to buy the subject computer.  On this point, Plaintiff states:

> It is well established that misrepresentation in the inducement of a contract makes the contract void at the outset.  Any case brought pursuant to GBL 349 false advertising voids at the outset any contract entered into as a result of the false advertisement.  The theory of common law contract and the statutory remedy for false advertising regarding purchased products are mutually inconsistent.[15]

Plaintiff therefore contends that the arbitration agreement is not valid, because he was misled into buying the computer by the "false advertising" concerning the computer's battery life.[16]  Plaintiff maintains that he bought the computer based upon Defendants' misrepresentations about the battery-life of the computer, but he is not seeking to return

---

[15]Pl. Memo of Law [#16] at un-numbered p. 7; [#17] at un-numbered p. 7. (citation omitted).

[16]*See*, Pl. Memo of Law [#16] at un-numbered p. 7 (Indicating that the "purchase was a statutory tort based on false representations as to the product's specifications.").

the computer,[17] nor does he allege that there was anything misleading or fraudulent about the arbitration agreement itself.[18]

Where a party challenges the applicability of an arbitration agreement based upon fraud, the law is clear:

> As the Supreme Court explained in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), challenges to a contract containing an arbitration clause fall into two categories: those that challenge the contract as a whole, and those that challenge the arbitration clause in particular. *Id*. at 444, 126 S.Ct. 1204.  If the challenge is to 'the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it.' *Id*. at 445, 126 S.Ct. 1204 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).  The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, however, 'does <u>not</u> permit the federal court to consider claims of fraud in the inducement of the contract generally.' *Buckeye Check Cashing*, 546 U.S. at 445, 126 S.Ct. 1204 (quoting *Prima Paint Corp.*, 388 U.S. at 404, 87 S.Ct. 1801).

*Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012) (emphasis added).  As the Supreme Court explained in *Buckeye*, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," so that where a party "challenge[s] the [agreement as a whole], but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. *Buckeye*, 546 U.S. at 445, 126 S. Ct. at 1209.

---

[17]See, Pl. Motion to Remand [#14] at un-numbered p. 3, ¶ d) III ("The basis of Plaintiff's claim is not that the computer itself is worthless, but rather that the battery of the computer is deficient for what it is advertised to be.  The measure of damages for each plaintiff is the cost of a replacement battery for each computer, or the cost of purchasing an external battery supplement for the computer[,] not the cost of replacing the entire computer.").

[18]Plaintiff denies that a valid arbitration agreement was formed; however, he does not claim that the terms of the arbitration agreement itself are fraudulent.

Here, Plaintiff is challenging the contract[19] as a whole, alleging that it was fraudulently induced by Defendants' exaggeration about the computer's battery life. However, pursuant to *Buckeye* and *Ipcon*, such assertion, even if true, does not result in the denial of Defendants' motion to compel arbitration.  Rather, assuming that the arbitration clause itself is enforceable, the issue of fraud in the inducement of the contract as a whole must be determined by an arbitrator.  Plaintiff's argument on this point, in opposition to Defendants' motion to compel arbitration, therefore lacks merit.

Plaintiff's fourth and final argument in opposition to Defendants' motion to compel arbitration is that no arbitration agreement was formed, because he never saw Dell's Terms and Conditions until after he paid for the computer.  On this point, Plaintiff argues that, "[a]ny contracts arise at the point of sale, not after the product has already been purchased."[20]  Plaintiff's objection in this regard is to the timing of the formation of the alleged arbitration agreement.  Plaintiff, an attorney, has not denied that he saw and understood Dell's Terms and Conditions on the computer's packaging or screen after purchasing the computer, nor has he raised any objection to the form or terms of the arbitration provision, *per se*.

The issue that Plaintiff has raised, therefore, is whether, in the context of a retail purchase, a binding arbitration agreement can be formed if the purchaser was not advised of the arbitration provision prior to the sale.  More specifically, if a purchaser is unaware of the arbitration clause prior to the sale, but after the sale acts in a manner

---

[19]*See*, New York Uniform Commercial Code § 2-204(1) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.").

[20]Pl. Memo of Law [#16] at un-numbered p. 6

indicating his agreement with the proposed arbitration clause, is a binding arbitration

agreement formed?  The law of the State of New York answers that question in the

affirmative.  For example, the New York State Supreme Court, Appellate Division First

Department rejected an argument quite similar to Plaintiff's:

> [Supreme Court] properly rejected  appellant's argument that the
> arbitration clause was invalid under UCC 2-207.  Appellants claim that
> when they placed their order they did not bargain for, much less accept,
> arbitration of any dispute, and therefore the arbitration clause in the
> agreement that accompanied the merchandise shipment was a "material
> alteration" of a pre-existing oral agreement. Under UCC 2-207 (2), such a
> material alteration constitutes "proposals for addition to the contract" that
> become part of the contract only upon appellants' express acceptance.
> However, as the court correctly concluded, the clause was not a "material
> alteration" of an oral agreement, but, rather, simply one provision of the
> sole contract that existed between the parties. That contract, the court
> explained, was formed and acceptance was manifested not when the
> order was placed but only with the retention of the merchandise beyond
> the 30 days specified in the Agreement enclosed in the shipment of
> merchandise.
>
> ***
>
> [W]e agree with [the] rationale that, in such transactions, there is no
> agreement or contract upon the placement of the order or even upon the
> receipt of the goods.  By the terms of the Agreement at issue, it is only
> after the consumer has affirmatively retained the merchandise for more
> than 30 days – within which the consumer has presumably examined and
> even used the product(s) and read the agreement – that the contract has
> been effectuated.

*Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 250, 676 N.Y.S.2d 569 (1st Dept.

1998).  Accordingly, while Plaintiff argues that the only agreement he had with Dell

and/or Walmart was created when he paid for the computer at the store, the law of New

York State indicates otherwise.  Rather, the agreement was created when Plaintiff kept

and used the computer and/or clicked on the icon indicating that he accepted Dell's terms.

Moreover, Plaintiff's argument that an arbitration agreement cannot be created "post sale, through the [computer's] start up screens,"[21] is also an incorrect statement of law. *See, e.g., Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08 CIV. 5463 CM GWG, 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011) ("In New York, clickwrap agreements are valid and enforceable contracts.") (collecting cases); *see also, Moore v. Microsoft Corp.*, 293 A.D.2d 587, 587 (2d Dept. 2002) ("The terms of the [licensing agreement] were prominently displayed on the program user's computer screen before the software could be installed. Furthermore, the program's user was required to indicate assent to the [agreement] by clicking on the "I agree" icon before proceeding with the download of the software. Thus, the defendant offered a contract that the plaintiff accepted by using the software after having an opportunity to read the license at leisure."); *People ex rel. Spitzer v. Direct Revenue, LLC*, 19 Misc. 3d 1124(A), 862 N.Y.S.2d 816 (Sup. Ct. New York County 2008) ("Under New York law, such [clickwrap] contracts are enforced so long as the consumer is given a sufficient opportunity to read the [agreement], and assents thereto after being provided with an unambiguous method of accepting or declining the offer.  Claims that a consumer was not aware of the agreement or did not actually read it must be disregarded where, as here, it is undisputed that the agreement was acknowledged and accepted by clicking on the relevant icon.") (citations omitted).

---

[21]Pl. Memo of Law [#16] at un-numbered p. 6.

For all of the foregoing reasons, the arguments that Plaintiff has offered against the existence or validity of the arbitration agreement lack merit.  Plaintiff's claims against both Dell and Walmart must be arbitrated.  The Court therefore does not reach the 12(b)(6) applications.

CONCLUSION

Plaintiff's motion to remand [#14] is denied, and Defendants' motions  to stay this action and compel arbitration [#9][#11] are granted.  Defendants' alternative motions to dismiss are denied as moot.  The action is stayed pending the outcome of the arbitration.[22]

SO ORDERED.

Dated:      Rochester, New York
            February 17, 2017

                              ENTER:


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge

---

[22]*Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."), cert. denied, 136 S. Ct. 596, 193 L. Ed. 2d 471 (2015).